[Cite as *DATFT, L.L.C. v. AM Reflections Cleaning Servs. L.L.C.*, 2023-Ohio-1348.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DATFT LLC, | : | APPEAL NO. C-220217 |
| | | TRIAL NO. 21CV-06295 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| AM REFLECTIONS CLEANING SERVICES LLC, | : | |
| | | |
| Defendant-Appellant, | : | |
| | | |
| and | : | |
| | | |
| ANGELA TAYLOR, a.k.a. ANGELA MCDONALD, | : | |
| | | |
| Defendant. | : | |


Civil Appeal From:    Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 26, 2023


*Yonas and Phillabaum, LLC*, *Jason Phillabaum* and *Hope Platzbecker*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant AM Reflections Cleaning Services, LLC, ("AM Reflections") appeals from the trial court's entry granting summary judgment to plaintiff-appellee DATFT, LLC, on both its claim for breach of lease and on AM Reflections' counterclaim for breach of contract and awarding damages to DATFT in the amount of $9,450 plus pre- and post-judgment interest.

{¶2} In two assignments of error, AM Reflections argues that the grant of summary judgment was improper because the parties' contract was ambiguous and because there exist genuine issues of material fact. We find these arguments to be without merit and accordingly affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶3} AM Reflections and its sole proprietor Angela Taylor contracted with Sharon Square, LLC, to lease premises in a building owned by Sharon Square for a three-year period, beginning January 1, 2018. The contract provided that AM Reflections would pay $400 per month in rent from January 1, 2018, until June 28, 2018, and would then pay $450 per month for the remainder of the three-year period. AM Reflections and Taylor had a separate agreement with Sharon Square to clean the building. They were paid approximately $1,100 per month for these cleaning services, and Sharon Square paid for and provided the cleaning supplies.

{¶4} In September of 2018, Sharon Square sold the building to DATFT and assigned AM Reflections' lease to DATFT. AM Reflections continued to pay rent and to clean the building after the sale. The relationship between AM Reflections and Taylor and Tom Devitt, the manager of DATFT, was discordant. AM Reflections and Taylor were upset that they were not notified of the transfer of the lease from Sharon

Square to DATFT, that Devitt failed to respond to multiple requests that they made, that Devitt behaved in a manner that was "extremely unprofessional, nasty, and belligerent," and that Devitt continued to comingle the rent and cleaning bills, subtracting the rent from the cleaning bill, despite requests from AM Reflections and Taylor to keep the bills separate.

{¶5} In March of 2019, AM Reflections and Taylor terminated the lease. On April 1, 2019, counsel for AM Reflections and Taylor sent a letter to Devitt acknowledging that the lease had been terminated and stating that AM Reflections had removed its property from the premises. The letter further stated that DATFT owed AM Reflections $450 for improperly taking April's rent check out of March's cleaning invoice, and that, unless it canceled AM Reflection's cleaning services immediately, it would also owe the full amount of April's monthly invoice for cleaning services. The letter additionally disputed assignment of the lease from Sharon Square to DATFT, stating that the parties' lease provided that an assignment could only be processed with both parties' consent and agreement. On April 8, 2019, Devitt emailed Taylor terminating cleaning services.

{¶6} DATFT filed a complaint against AM Reflections and Taylor asserting a claim for breach of lease and seeking damages for lost rent, attorney's fees, and pre- and post-judgment interest. AM Reflections and Taylor filed a counterclaim against DATFT for breach of contract. The counterclaim alleged that Devitt had improperly commingled payments for rent and for cleaning services, had failed to pay for cleaning services, and had failed to give notice of the transfer of the lease from Sharon Square to DATFT.

{¶7} DATFT moved for summary judgment on both its claim for breach of lease and on the counterclaim for breach of contract. Attached to the motion was an affidavit from Devitt setting forth the terms of the lease pertaining to the rent owed by AM Reflections and Taylor, stating that AM Reflections and Taylor had unilaterally terminated the lease and failed to pay rent from April 2019 through December 2020, and stating that DATFT had made a good-faith effort to lease the premises after the breach, but was unable to do so.

{¶8} AM Reflections and Taylor filed a memorandum in opposition to DATFT's motion for summary judgment, accompanied by an affidavit from Taylor. The affidavit stated that Taylor was never informed about the assignment of the lease from Sharon Square to DATFT, set forth the terms of the cleaning agreement with Sharon Square, and explained how Devitt and DATFT deviated from the cleaning agreement by commingling the bills for rent and cleaning services. Taylor also stated in the affidavit that Devitt was dismissive of her and that his behavior created a hostile environment, which she deemed to be a breach of the agreement that she clean the building and pay rent accordingly.

{¶9} The trial court granted DATFT's motion for summary judgment and entered a judgment against AM Reflections in the amount of $9,450 plus pre- and post-judgment interest. It issued a separate entry dismissing Taylor without prejudice.

{¶10} AM Reflections now appeals.

### Standard of Review

{¶11} We review a trial court's grant of summary judgment de novo. *Collett v. Sharkey*, 1st Dist. Hamilton No. C-200446, 2021-Ohio-2823, ¶ 8. "Summary

4

judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Id.*, citing *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

### *The Lease was not Ambiguous*

{¶12} In its first assignment of error, AM Reflections argues that the trial court's grant of summary judgment was in error because the contract was ambiguous, creating a genuine issue of material fact. AM Reflections specifically contends that the provision in the lease concerning assignment was ambiguous.

{¶13} Section 9 of the parties' lease, titled "Assignment and Subletting," provided that "Tenant may assign or sublet the Premises with the prior written consent of Landlord. Such consent shall not be unreasonably withheld." The lease did not contain a similar provision concerning assignment by the landlord or requiring the landlord to obtain the tenant's written consent before assigning the lease. Section 16.2 of the lease, titled "Lease Binding upon Assignees," further addressed assignment and provided that "This Lease and all covenants, provisions and conditions herein contained shall inure to the benefit of and be binding upon the heirs, executors, administrators, personal representatives, successors and assigns, respectively of the parties hereto."

{¶14} A contract will be deemed ambiguous if "its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation." *Murphy Elevator Co. v. 11320 Chester LLC*, 2018-Ohio-1362, 110 N.E.3d 787, ¶ 17 (1st Dist.), quoting *Kelly Dewatering and*

5

*Constr. Co. v. R.E. Holland Excavating, Inc.*, 1st Dist. Hamilton No. C-030019, 2003-Ohio-5670, ¶ 21. The contract in this case was a lease, which is to be interpreted like any other contract. *Wal-Mart Realty Co. v. Tri-County Commons Assocs., LLC*, 1st Dist. Hamilton No. C-160747, 2017-Ohio-9280, ¶ 9. With regard to assigning contracts, Ohio law favors the free assignment of contracts in the absence of "clear contractual language" prohibiting the assignment. *See Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 36. With respect to leases specifically, a lease is assignable in the absence of a prohibition in the lease itself. *GMS Mgmt. Co. v. Vliet*, 9th Dist. Summit No. 22807, 2006-Ohio-515, ¶ 11.

{¶15} As a starting point, to the extent that AM Reflections claims that Sharon Square was prohibited from assigning the lease to DATFT, that claim necessarily fails because AM Reflections has not—and cannot—point to "clear contractual language" in the lease that prohibits the assignment. At most, AM Reflections alleges an ambiguity in the contract, but ambiguous terms do not undo the presumption in favor of free assignment; only clear ones do.

{¶16} Moreover, even if an ambiguity were sufficient to prohibit assignment, we find no ambiguity in the assignment provision of the parties' lease. The lease clearly contemplated assignment by both parties. This is evidenced in Section 16.2, which provides that the lease would be binding on assigns "of the parties hereto." Reading Section 9 and Section 16.2 in conjunction, the only reasonable interpretation of the lease is that the parties intended to require the tenant, and not the landlord, to obtain written consent from the other party prior to assigning or subletting the premises. There is no other reasonable interpretation of these provisions. *See*

*Murphy Elevator Co.* at ¶ 17. This result is consistent with Ohio law allowing the free assignment of contracts when there is no language in the contract that prohibits a party from making an assignment.

**{¶17}** Having found no ambiguity in the contract, and no clear prohibition in the lease prohibiting its assignment by the landlord, we accordingly overrule the first assignment of error.

### *Summary Judgment Appropriately Granted*

**{¶18}** In the second assignment of error, AM Reflections argues that the trial court erred in granting the motion for summary judgment because there exist genuine issues of material fact. Other than arguing that the contract was ambiguous, an argument that we have considered and rejected, AM Reflections provides no specific argument as to what genuine issues of material fact exist.

**{¶19}** We first consider the trial court's grant of summary judgment on DATFT's claim for breach of lease. To succeed on a such a claim, a party must establish "(1) the existence of a contract, (2) a breach of that contract, and (3) damages resulting from that breach." *Blue Ash Auto Body, Inc. v. Grange Prop. & Cas. Ins. Co.*, 1st Dist. Hamilton No. C-220165, 2022-Ohio-4599, ¶ 10.

**{¶20}** We find that there exists no genuine issue of material act as to any of these elements. First, the lease between the parties was indisputably a valid contract, and neither party argues otherwise. Second, Devitt's affidavit established that AM Reflections unilaterally terminated the lease and failed to pay rent from April 2019 on. Third, Devitt's affidavit additionally established that he was unable to lease the premises following the breach and that DATFT suffered damages in the amount of the monthly rent that DATFT should have received from AM Reflections and Taylor.

There was no material dispute as to any of these factors. AM Reflections seemingly argues that its termination of the lease was factually justified by Devitt's alleged rude treatment of Taylor. But AM Reflections made no attempt to argue that Devitt's behavior legally justified its breach. We therefore find no error in the trial court's grant of summary judgment to DATFT on its breach-of-lease claim.

{¶21} We now turn to the counterclaim for breach of contract. AM Reflections argues two theories of liability under this counterclaim: that DATFT breached the lease by failing to give notice that the lease had been assigned, and that DATFT breached the alleged cleaning contract by comingling rent payments with cleaning payments and by failing to pay for cleaning services. With respect to AM Reflections' first argument concerning notice of the assignment, AM Reflections has failed to present a valid claim for breach of contract under this theory. For one thing, the lease did not require the party serving as the landlord to either obtain written consent prior to assigning the lease or to give notice that the lease was assigned. Moreover, even if it had, Sharon Square, and not DATFT, would have been the party to have given notice of the assignment, and AM Reflections raises no claims against Sharon Square in this action. And AM Reflections does not cite, nor have we found, a statutory provision requiring such notice. Finally, we observe that AM Reflections appears to have had actual notice of the assignment to DATFT, as it described its dealings with DATFT in Taylor's affidavit.

{¶22} With respect to its second argument or theory of liability, AM Reflections took the position below that it had no contract with DATFT. But its entire argument concerning cleaning services rests on a theory of breach of contract, rather than unjust enrichment or some other quasi-contractual claim. The separate cleaning-

services agreement, however, was never made a part of the record. The record does not indicate whether it was an oral agreement or a written agreement or what the specific terms of the agreement were. It is clear from Taylor's affidavit that the agreement was with Sharon Square, and not DATFT. As such, the existence of a contract with DATFT for cleaning services has not been established, let alone that DATFT breached that alleged contract. In the absence of such a contract, the trial court did not err in awarding summary judgment to DATFT on AM Reflections' counterclaim.

{¶23} The second assignment of error is overruled, and the judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**CROUSE, P.J.**, and **ZAYAS, J.**, concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.